UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIDHARTHA DATTA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UR M. JADDOU, Director, U.S. Citizenship and Immigration Services, et al., <br><br> Defendants. | CASE NO. 2:22-cv-1302-JHC <br><br> ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |

# I.

## INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order. Dkt. # 5. Defendants oppose the motion. Dkt. # 9. Having reviewed the submissions of the parties, the case file, and the applicable law, the Court hereby DENIES the motion.

# II.

## BACKGROUND

Plaintiffs comprise approximately 200 families lawfully living and working in the United States in non-immigrant status. Dkt. # 1 at 7–49; Dkt. # 5 at 8. They are all adjustment of status applicants—some are principal applicants and others are derivative applicants—with approved

immigrant visas under 8 U.S.C. § 1153(b)(2) ("EB2") chargeable to India.  Dkt. # 1 at 55; Dkt. # 5 at 8.  Plaintiffs' priority dates for their visa petitions range between April 2, 2012, and December 1, 2014.  Dkt. # 5 at 8.

As of the Department of State's ("DOS") September 2022 visa bulletin, which identified the "current date" for Plaintiffs' preference category as December 1, 2014, all Plaintiffs had EB2 immigrant visas immediately available to them.  Dkt. # 5 at 8.  However, the recently released October 2022 visa bulletin identifies the "current date" for Plaintiffs' preference category as April 1, 2012, indicating a "retrogression" of 32 months.  Dkt. # 5 at 9.  Defendants have announced that they will apply this retrogression policy to Plaintiffs beginning on October 1, 2022, and as a result Plaintiffs' adjustment of status applications will not be adjudicated until their priority dates become current again.  Dkt. # 1 at 57–58.  Plaintiffs argue that Defendants' retrogression policies are unlawful and must be enjoined.  Dkt. # 1 at 63; Dkt. # 5 at 10.

Plaintiffs initiated this lawsuit on September 14, 2022, bringing two causes of action under the Administrative Procedure Act ("APA"), one directed at United States Citizenship and Immigration Services ("USCIS") and the other directed at DOS.  Dkt. # 1 at 60–63.  They ask this Court to declare both USCIS's and DOS's retrogression policies unlawful and to enjoin the agencies from applying them.  Dkt. # 1 at 63.  They also ask the Court to order USCIS to issue final decisions on Plaintiff's Forms I-485 within six months, and to order DOS to issue available visa numbers to Plaintiffs upon approval of their Forms I-485.  *Id.*  Lastly, Plaintiffs ask the Court to award attorney fees and costs under the Equal Access to Justice Act ("EAJA").  *Id.*

On September 15, 2022, Plaintiffs moved this Court for a Temporary Restraining Order ("TRO") enjoining Defendants from applying their retrogression policies on October 1, 2022, to "ensure Plaintiffs remain eligible for adjustment of status when fiscal year 2023 immigrant visas become available."  Dkt. # 5 at 3.

ORDER DENYING PLAINTIFFS'
MOTION FOR TEMPORARY
RESTRAINING ORDER - 2

### III.

### ANALYSIS

The legal standards that apply to injunctions apply to TROs as well. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839, n. 7 (9th Cir. 2001) (preliminary injunction and temporary restraining order standards are "substantially identical"). A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). To obtain a TRO, Plaintiffs must show that they are (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009). The first two factors are the most important. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The third and fourth factors typically "merge when the Government is the opposing party." *Id.* at 435.

With respect to the first factor, the Court notes that Plaintiffs here are requesting affirmative conduct that would stretch beyond simply maintaining the status quo. Although they frame their request in the negative, by stating that they are asking the Court to "restrain, enjoin, and invalidate Defendants' Retrogression Policies," Dkt. # 5 at 21, the practical effect of a temporary restraining order would be to order Defendants to take affirmative steps on Plaintiffs' adjustment of status applications, as they acknowledge in their briefing. *See* Dkt. # 5 at 10–12, 17. Because the purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered, *see U.S. Philips Corp. v. KBC Bank N.V.,* 590 F.3d 1091, 1094 (9th Cir. 2010), a motion for such mandatory preliminary relief "is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.,* 7 F.3d 1399, 1403 (9th Cir. 1993); *see also*

*Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 675 (9th Cir. 1984) (when a party "seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite,* courts should be extremely cautious about issuing a preliminary injunction.").

While the Court is troubled by the retrogression of the visa bulletin, as well as the opaque and apparently confusing nature of the immigration visa system in general for applicants, it finds that Plaintiffs have not shown that the facts and law *clearly* favor their position such that issuance of a TRO would be appropriate.  Questions remain regarding whether there is a statutory or regulatory "specific, unequivocal command" to take discrete agency action that is judicially enforceable under the APA, *see Vietnam Veterans of Am. v. Cent. Intel. Agency,* 811 F.3d 1068, 1078 (9th Cir. 2016), whether the agencies' retrogression policies represent a lawful exercise of the discretion granted them by Congress, and whether adhering to Plaintiffs' position would force the agencies to violate other statutory provisions.

With respect to the second factor, the "irreparable harm" that Plaintiffs cite is too vague and speculative to warrant a temporary restraining order at this stage.  Plaintiffs argue that, if Defendants' retrogression policies go forward on October 1, 2022, they will be deprived of their "right to receive a final decision on their pending adjustment of status petitions," they will face an "indeterminate delay on the adjudication of their adjustment of status applications," they will be deprived of the benefits of lawful permanent residency, and they will risk family separation. Dkt. # 5 at 18–20.  However, Plaintiffs will not lose their priority dates or their place in the immigration visa queue on October 1, 2022, and they will remain eligible for adjustment of status through the pendency of their applications, which they seem to concede in their briefing by referencing an "indeterminate delay" as opposed to a termination or automatic denial of their applications.  Dkt. # 5 at 19.  And any such delay would not represent a concrete deprivation, as there is no statutory or regulatory deadline for the adjudication of adjustment applications.  *See*

ORDER DENYING PLAINTIFFS'
MOTION FOR TEMPORARY
RESTRAINING ORDER - 4

*generally* 8 U.S.C. § 1255; *Skalka v. Kelly*, 246 F.Supp.3d 147, 153–54 (D.C.C. 2017). In addition, the allegation that Plaintiffs will be deprived of the benefits of lawful permanent residency is speculative as it assumes that Plaintiffs' applications will ultimately be approved, and the risk of family separation is similarly speculative as it assumes that multiple members of the same family will have their applications adjudicated differently. Lastly, Plaintiffs do not allege that they are at imminent risk of removal from the United States, that they will lose the ability to work or travel, or that any of the rights currently afforded to them will be stripped away on October 1, 2022. *See generally* Dkt. # 5. While the Court understands that Plaintiffs are facing substantial uncertainty while their Forms I-485 remain pending, they have not met the high bar of demonstrating immediate threatened injury, which is required for TRO relief. *Caribbean Marine Serv. Co., Inc. v. Balridge,* 844 F.2d 668, 674 (9th Cir. 1988). The Court also notes that, should Plaintiffs ultimately succeed on the merits of their arguments, the Court may order Defendants to process their applications. *See Sampson v. Murray,* 415 U.S. 21, 90 (1974) (harm is irreparable when it cannot be undone by a later order of the court).

      With respect to the last two factors, the Court recognizes that the United States public appears to benefit from Plaintiffs' presence in the country, and that the balance of equities appears to favor noncitizen professionals with advanced degrees or an "exceptional ability" receiving immigrant visas. However, the Court also finds that ordering a temporary restraining order could cause a significant disruption to the legal framework for visa issuance that may result in the loss of visas, the risk of Defendants being forced to violate other statutory provisions, and the ultimate possibility that Plaintiffs may not benefit at all due to Congress's mandate that immigrant visas be issued in chronological order based on priority date. *See* 8 U.S.C. § 1153(e). Finally, the Ninth Circuit has held that injunctive relief may not issue without a "threshold showing of irreparable harm…regardless of the petitioner's proof of the other…factors." *Leiva-*

*Perez v. Holder,* 640 F.3d 962, 965 (9th Cir. 2011); *see also Germon v. Times Mirror Co.* 520 F.2d 786, 788 (9th Cir. 1975) ("Because [Plaintiff] failed to sustain his burden of showing a likelihood of success on the merits, we need not consider the issue of irreparable injury since [Plaintiff] would not be entitled to the relief sought even if he were to prevail on this issue."). As discussed above, Plaintiffs have not met their burden of proof on the first two factors; thus, even if they were able to do so with respect to the last two factors, the Court could not grant a TRO.

## IV.
### CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Temporary Restraining Order. Dkt. # 5. The Court recognizes the challenges facing individuals who await decisions on their adjustment of status applications. However, Plaintiffs have not overcome the high bar required for immediate injunctive relief.

Dated this 29th day of September, 2022.

*/s/ John H. Chun*
John H. Chun
United States District Judge