UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIDHARTHA DATTA, et al.,[1] <br><br> Plaintiffs, <br><br> v. <br><br> UR M. JADDOU, Director, U.S. Citizenship and Immigration Services, et al., <br><br> Defendants. | CASE NO. 2:22-cv-1302-JHC <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

# I
## INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. # 14. Plaintiffs are generally natives of India who lawfully work in the United States and have pending applications for adjustment of status. Dkt. ## 1 at 7–49, ¶¶ 1–436; 5 at 8. Plaintiffs ask the Court to enjoin certain policies related to visa availability and to order Defendants' agencies, the United States Citizenship and Immigration Services (USCIS) and the Department of State (DOS), to promptly adjudicate their applications for adjustment of status. Dkt. # 1 at 63, ¶¶ 528–30. Defendants seek dismissal

---

[1] Sidhartha Datta is no longer a Plaintiff. Dkt. # 24.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 1

under Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiffs fail to state a claim upon which relief can be granted. Dkt. # 14. The Court has reviewed the materials filed in support of and in opposition to the motion, the rest of the case file, and the governing law. Being fully advised, the Court GRANTS the motion and DISMISSES this case with prejudice.

## II
## BACKGROUND

A.    Adjustment of Status and Visa Availability

Plaintiffs comprise about 200 noncitizen families lawfully living and working in the United States. Dkt. ## 1 at 7–49, ¶¶ 1–436; 5 at 8. Under 8 U.S.C. § 1255(a), a noncitizen seeking permanent residency must satisfy three requirements: (1) apply for adjustment of status; (2) be eligible for an immigrant visa and permanent resident status; and (3) have an immigrant visa "immediately available to him at the time his application is filed." *Babaria v. Blinken*, 87 F.4th 963, 972 (9th Cir. 2023). If a noncitizen meets these requirements, the Attorney General "may" adjust their status "in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). One such regulation is 8 C.F.R. § 245.2(a)(5)(ii), which provides that an employment-based application for adjustment of status "shall not be approved until an immigrant visa number has been allocated by the Department of State." *Babaria*, 87 F.4th at 972.

Plaintiffs appear to satisfy the first two statutory requirements because they applied for adjustment of status with approved employment-based EB-2 visas under 8 U.S.C. § 1153(b)(2). Dkt. # 1 at 55, ¶ 474. The Court addresses the visa availability requirements under 8 U.S.C. § 1255(a) and 8 C.F.R. § 245.2(a)(5)(ii) in further depth.

The availability of visas varies each year and DOS processes visas "on a 'first-come, first-served' basis." *Babaria*, 87 F.4th at 973–74 (citation omitted). A visa applicant receives a "priority date," which marks their place in the queue. *Id.* at 974. For EB-2 visas, the priority

date is generally the date that the Department of Labor accepts a sponsoring employer's application for labor certification. *Id.* Each month, DOS projects that visas will be available for applicants with priority dates before a "final action" date, which is subject to revision. *Id.* Priority dates earlier than a final action date are called "current." *Id.*

Plaintiffs' priority dates range between April 2, 2012, and December 1, 2014. Dkt. ## 1 at 55–56, ¶ 478; 5 at 8. In September 2022, most Plaintiffs' priority dates were current because the final action date was December 1, 2014. *Id.* at 55, ¶ 476. But final action dates can retrogress (i.e., change to an earlier date) if DOS determines that it has overestimated the availability of visas. *Babaria*, 87 F.4th at 974. Retrogression of a final action date can make an applicant's priority date no longer current but does not affect an applicant's position in the queue. *Id.* In October 2022, Plaintiffs' priority dates became no longer current because the final action date retrogressed to April 1, 2012. *Id.* at 974–75; *see also* Dkt. # 1 at 57–58, ¶¶ 488–92.

Plaintiffs satisfy 8 U.S.C. § 1255(a)'s requirement that visas must be immediately available when they applied for adjustment of status. Dkt. # 1 at 58, ¶ 492. But because the final action dates retrogressed, they do not satisfy 8 C.F.R. § 245.2(a)(5)(ii)'s requirement that visas must be available when their applications are approved. *See Babaria*, 87 F.4th at 972.

B.   Procedural History

Plaintiffs brought this lawsuit on September 14, 2022, with two causes of action under the Administrative Procedure Act (APA). Dkt. # 1 at 60–63, ¶¶ 504–19. They ask the Court to declare unlawful and enjoin Defendants' retrogression policies. *Id.* at 63, ¶¶ 526–28. They also ask the Court to order USCIS to adjudicate Plaintiffs' applications for adjustment of status and to order DOS to issue available visa numbers to Plaintiffs upon approval of their applications. *Id.* at 63, ¶¶ 529–30.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 3

On September 15, 2022, Plaintiffs moved for a Temporary Restraining Order (TRO) to enjoin Defendants' retrogression policies. Dkt. # 5 at 3. The Court denied the motion because Plaintiffs did not show that the facts and law clearly favored their position or that they satisfied the other factors for a TRO. Dkt. # 10 at 4–6. Plaintiffs appealed the denial, and the appeal was consolidated with appeals in two other cases. Dkt. # 11; *Babaria*, 87 F.4th at 975. While the appeal was pending, Defendants filed the present motion to dismiss. Dkt. # 14. After the parties fully briefed the motion, the Court stayed proceedings pending appeal. Dkt. # 21.

On December 1, 2023, the Ninth Circuit affirmed the Court's denial of a TRO, concluding that Plaintiffs had not shown likelihood of success on the merits. *Babaria*, 87 F.4th at 980. The Ninth Circuit held that 8 C.F.R. § 245.2(a)(5)(ii) adhered to the text of 8 U.S.C. § 1255(a), the broader regulatory structure, and legislative history. *Id.* at 976–80. The Supreme Court denied Plaintiffs' petition for a writ of certiorari. Dkt. # 31. Upon request of the parties, the Court lifted the stay on proceedings to rule on the present motion to dismiss. Dkt. # 33.

### III
### DISCUSSION

In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes all well-pleaded factual allegations as true and determines whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs acknowledge that Defendants move for dismissal on purely legal grounds. Dkt. # 15 at 2 n.1; *see also* Dkt. # 1 at 50, ¶ 447.

Plaintiffs claim that Defendants are unlawfully withholding agency action. Dkt. # 1 at 60–62, ¶¶ 504–19. Under the APA, courts may review an agency's "failure to act." 5 U.S.C. §§ 551(13), 704. "Failure to act" is not broadly construed; it is limited to an agency's failure to take a *discrete* agency action that is legally *required*. *Norton v. S. Utah Wilderness All.*, 542

U.S. 55, 62–64 (2004) (citing 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed")). Plaintiffs say that Defendants are unlawfully withholding adjudications of their applications for adjustment of status. Dkt. # 15 at 2 (citing Dkt. # 1 at 63, ¶¶ 529–30).

Even if adjudications of applications for adjustment of status are discrete, Plaintiffs do not show that such actions are legally required. Plaintiffs suggest that Defendants must adjudicate their applications because they satisfy all the legal requirements for adjustment of status.[2] Although Plaintiffs do not satisfy 8 C.F.R. § 245.2(a)(5)(ii)'s requirement that visas must be available when their applications are approved, they assert that this regulation and Defendants' retrogression policies are unlawful. Dkt. # 1 at 61–62, ¶¶ 508–09, 516–17.

But in affirming the Court's denial of a TRO, the Ninth Circuit held that 8 C.F.R. § 245.2(a)(5)(ii) and Defendants' retrogression policies are lawful.[3] The Ninth Circuit rejected the contentions that Plaintiffs raise in their response to the present motion to dismiss, which was briefed before the Ninth Circuit issued its decision. These contentions are that 8 C.F.R. § 245.2(a)(5)(ii): (1) conflicts with 8 U.S.C. § 1255(a)'s text and legislative history; (2) clashes with the statutory structure; and (3) is contrary to *Hernandez v. Ashcroft*, 345 F.3d 824 (9th Cir. 2003). And although the Ninth Circuit did not address Plaintiffs' assertion that *Matter of Huang*,

---

[2] The parties do not discuss why the Attorney General's discretion under 8 U.S.C. § 1255(a) to determine whether to adjust the status of a noncitizen who meets all the statutory requirements does not foreclose Plaintiffs' claims. But the Court need not address this issue or whether the retrogression policies are unreviewable under the APA, *see* Dkt. # 15 at 4–5, because the Court concludes that, in any event, Plaintiffs do not satisfy 8 C.F.R. § 245.2(a)(5)(ii)'s lawful requirement that visas must be available when their applications for adjustment of status are approved.

[3] Neither Plaintiffs' response, Dkt. # 15, nor the Ninth Circuit's decision addresses the lawfulness of the retrogression policies separately from that of 8 C.F.R. § 245.2(a)(5)(ii). To the extent that these inquiries are distinct, the Ninth Circuit held that the retrogression policies align with 8 U.S.C. § 1153(e)'s requirement of issuing visas in the order of priority dates. *Babaria*, 87 F.4th at 978.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 5

16 I. & N. Dec. 362.1 (BIA 1978), undermines the legality of 8 C.F.R. § 245.2(a)(5)(ii), this case is not on point.[4]

Both 8 U.S.C. § 1255(a)'s text and legislative history support Defendants' enforcement of 8 C.F.R. § 245.2(a)(5)(ii). Although § 1255(a) does not expressly require visas to be available when an application for adjustment of status is approved, it grants the Attorney General discretion to approve such applications. Thus, "the statute vests the government with considerable leeway in establishing the process [governing adjustment of status]." *Babaria*, 87 F.4th at 977.

Legislative history supports the government's discretion. In 1976, Congress amended the Immigration and Nationality Act (INA) to require that a visa must be available only when an application for adjustment of status is filed. *Id.* at 978. This departed from the pre-1976 INA, which required visas to be available "at the time [the] application is approved." *Id.* Plaintiffs say that this change shows that Congress intended to eliminate a requirement that a visa must be available when an application is approved. Dkt. # 15 at 7. But the Ninth Circuit concluded that Congress likely enacted the 1976 amendment not to address visa quotas but to address the pre-1976 INA's requirement that an applicant must always have an approved family or employment sponsored visa petition to obtain adjustment of status. *Babaria*, 87 F.4th at 979. This requirement could foreclose adjustment of status for a noncitizen who initially has an approved visa petition but, because of a change in circumstances (e.g., the ending of a marriage or job), has that petition denied or revoked while their application for adjustment of status is pending.[5] *Id.*

---

[4] Plaintiffs cite *Matter of Huang*, Int. Dec. 2616 (BIA 1977). Dkt. # 15 at 7. But in *Huang*, 16 I. & N. Dec. 362.1, at *3, the Board of Immigration Appeals (BIA) granted a motion for reconsideration and reversed its decision in *Huang*, Int. Dec. 2616.

[5] By contrast, 8 C.F.R. § 245.2(a)(5)(ii)'s requirement that a visa must be available when an application for adjustment of status is approved is "a *mechanical requirement* necessary to actually adjust

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 6

Thus, the 1976 amendment increased—rather than restricted—the executive branch's discretion "to ameliorate some of the harsh consequences to applicants whose circumstances changed while they awaited status adjustment." *Id.* And although Plaintiffs assert that Congress's silence on Defendants' enforcement of 8 C.F.R. § 245.2(a)(5)(ii) should not be construed as tacit approval, the Ninth Circuit rejected this contention. *See id.*

Defendants' enforcement of 8 C.F.R. § 245.2(a)(5)(ii) follows the statutory structure. Requiring visas to be available when applications for adjustment of status are approved aligns with 8 U.S.C. § 1255(b), which provides, "Upon *the approval* of an application for adjustment [of status] . . . the Secretary of State shall reduce by one the number of the preference visas authorized to be issued" (emphasis added). *Babaria*, 87 F.4th at 977–78. Plaintiffs also do not adequately respond to Defendants' assertion that statutory limitations on the availability of visas support their discretion in determining how to process applications for adjustment of status. *See* Dkt. ## 14 at 17–18; 15 at 8. And from a policy standpoint, the Ninth Circuit recognized that granting Plaintiffs the relief that they seek would create a rule that would result in unused visas and cause further delays. *Babaria*, 87 F.4th at 979–80.

Plaintiffs' contentions based on *Hernandez*, 345 F.3d 824 and *Huang*, 16 I. & N. Dec. 362.1 are unpersuasive. Plaintiffs assert that 8 C.F.R. § 245.2(a)(5)(ii) conflicts with *Hernandez*, 345 F.3d 824, but the Ninth Circuit rejected this contention because the court in *Hernandez* "recognized that '*adjustment cannot actually be granted unless a [visa] number is also available at the time of adjustment.*'" *Babaria*, 87 F.4th at 977 (citing *Hernandez*, 345 F.3d at 844 n.21). Plaintiffs also say that *Huang*, 16 I. & N. Dec. 362.1 undermines the legality of 8 C.F.R. § 245.2(a)(5)(ii). Dkt. # 15 at 7. But *Huang* involved a noncitizen who first filed an application

---

status, one that does not defeat eligibility but which may affect processing of an approved petition." *Babaria*, 87 F.4th at 977 (quoting *Hernandez*, 345 F.3d at 844 n.21).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 7

for adjustment of status with a District Director, who denied the application. 16 I. & N. Dec. 362.1, at *1. After deportation proceedings began against the noncitizen, he filed a second application for adjustment of status with an immigration judge, who denied the application because no visa was available when the noncitizen filed this second application. *Id.* The BIA disagreed with the immigration judge and held that whether a noncitizen satisfies the requirement that a visa must be available when they file an application for adjustment of status is determined based on when the application is filed with a District Director. *Id.* at *2. The BIA held that a second application filed with an immigration judge is not a new "filing," but a renewal of an application filed with a District Director. *Id.* The BIA's holding is irrelevant here because Plaintiffs are not in deportation proceedings.

## IV
## CONCLUSION

For these reasons, the Court GRANTS Defendants' motion and DISMISSES this matter with prejudice. The Court declines to grant leave to amend because it concludes that amendment would be futile. The Court recognizes Plaintiffs' frustrations with the opaque nature of the immigration visa system but reiterates the Ninth Circuit's holding that "in this instance, relief must come from action by the executive and legislative branches rather than the judiciary." *Babaria*, 87 F.4th at 980.

Dated this 28th day of February, 2025.

John H. Chun
United States District Judge